UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CHRISTINE A. CANTY,               )
                                 )
Plaintiff,                        )
                                 )        2:11-cv-232
v.                                )
                                 )
WALGREENS CO.,                    )
                                 )
Defendant.                        )


OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 60] filed by the

defendant, Walgreens Co., on October 31, 2012.  For the following reasons, the motion is

GRANTED.


Background

The defendant, Walgreens Co., owns and operates a chain of retail drug stores throughout

the United States.  Each Walgreens store is led by a store manager, one executive assistant, and

three or four management trainees.  The store manager reports to a district manager who

oversees a region.

The plaintiff, Christine Canty, was hired by Walgreens in 2004 as a management trainee

for the St. John, Indiana location.  The district manager of this region, Steve Gagne, participated

in the decision to hire her.  Over the next six years, Canty worked as a management trainee at

several Walgreens stores in the Northwest Indiana region.  In February 2009, she was assigned

to the Walgreens store located at 6510 Columbia Avenue in Hammond, Indiana.  Canty worked

1

at this location until she was terminated in June 2010. At this store, Canty was supervised by store manager James Rusher until August 1, 2009, and then Mark Robbins supervised Canty until she was terminated.

As a management trainee, Canty was responsible for performing cash counts, giving refunds to customers, balancing register receipts, operating registers, directing subordinate employees, and providing customer service. Robbins explained that management trainees were expected to have strong interpersonal skills, the ability to work with people, the ability to resolve concerns of disgruntled customers, and the ability to defuse and calmly handle conflicts. While employed at Walgreens, Canty participated in training programs concerning communicating with people, working with upset customers, and handling disagreements between customers and employees.

Walgreens alleges that numerous customer complaints about Canty were received during her employment at the Hammond, Indiana store. In April 2009, Rusher was contacted by a customer who complained that Canty refused to give her a refund for an item purchased because the customer used an electronic benefit transfer card. Canty responded that it was not possible to refund money back onto an EBT card and instead offered the customer in-store credit, which she refused.

In May 2009, Rusher received two complaints from customers about the tone Canty used with them. Rusher spoke with Canty about the complaints, but Canty never was disciplined.

On November 20, 2009, Robbins received a complaint because Canty would not put money on a green dot Visa, a transaction that the customer had done numerous times before. The customer reported that Canty told her the transaction could not be performed, and when the

customer asked Canty to call someone to assist her, Canty instructed the customer to leave or she would call security. The customer told Robbins that she no longer would shop at the store. At her deposition and in her response brief, Canty explained that another employee, Paul, was waiting on the customer and called Canty for assistance. The customer complained that he never had been charged a fee for putting money on a green dot card. Canty explained that there was a $5 fee for putting money on the green card.

Approximately one week later, Robbins received another complaint about Canty. The customer reported that she asked to use the store's restroom but that Canty refused and was rude and disrespectful to her. The customer told Robbins that she would not shop at the store again. At her deposition, Canty explained that another employee, Sean, was the first to tell the customer that customers were not allowed to use the restroom at night. The customer then asked to speak to a manager, and Canty apologized and told her it was the store policy that customers were not allowed to use the restroom at night. In her response brief, Canty has alleged that another male hourly employee also told the customer that she could not use the restroom but that Canty was the only employee written up for the incident.

Robbins also received a complaint on December 16, 2009. Canty denied that she was the employee who interacted with this customer. Based on these complaints, Robbins issued Canty a written warning for poor customer service.

On March 13, 2010, Canty had a disagreement with an angry customer. The situation escalated, and security had to be called to remove the customer from the store. The customer later called the store, but Canty refused to speak with her and hung up on her because she "didn't feel like [she] needed to be taking verbal abuse from a customer." (Canty Dep. p. 130-131)

Later that day, the customer spoke with the executive assistant, Todd Doctor. Robbins investigated the situation and determined that Canty handled it poorly. Robbins believed that Canty should have given the customer the items she wanted and apologized when she realized the customer was angry. Instead, Canty argued with the customer and allowed the situation to escalate. Robbins issued Canty a final written warning, which warned that further instances of unprofessional conduct, poor customer service, or any other violation of company policy would result in further disciplinary action, including termination.

In May 2010, Robbins met with Canty to discuss her annual performance review. Canty was rated "Unacceptable" in the area of customer service and rated "Needs Improvement" in six of the ten other areas. Canty's overall rating was "Needs Improvement". Robbins wrote that Canty needed to improve her ability to handle conflicts with customers and employees, improve her tone, and listen more. Her evaluation stated that unless her job performance improved, further action, including discharge, would be warranted.

In June 2010, Robbins received and investigated another customer complaint about Canty. The customer complained that Canty was rude to her when she was making a purchase. The customer alleged that Canty argued whether the use of a coupon affected her ability to get register reward coupons for future purchases. After receiving this complaint, Robbins consulted with Gagne and concluded that Canty's employment should be terminated. Canty was discharged on June 25, 2010.

On August 18, 2010, Canty filed a charge of discrimination, alleging that her employment with Walgreens was terminated because of her sex. Canty was issued a Dismissal and Notice of Rights on March 29, 2011, and filed a *pro se* complaint in June 2011, which

alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 of the Civil Rights Act of 1871, and the Health Insurance Portability and Accountability Act of 1995 (HIPPA). Walgreens moved to dismiss all of Canty's claims except her claim for gender discrimination. The court granted Walgreens motion. Canty amended her complaint on June 29, 2012, alleging that there were four assistant store managers who were treated more favorably.

Walgreens filed its motion for summary judgment on October 31, 2012, arguing that none of the assistant managers Canty identified were similarly situated because they did not have a similar disciplinary record and none had received more than one customer complaint in a six month period. Walgreens also has argued that Canty cannot show that she was meeting her employer's legitimate expectations.

<u>Discussion</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 , 91 L. Ed. 2d 265 (1986); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*,

569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008). However, summary

judgment may be entered against the non-moving party if it is unable to "establish the existence

of an essential element to [the party's] case, and on which [that party] will bear the burden of

proof at trial . . .". ***Kidwell***, 679 F.3d at 964 (citing *Benuzzi v. Bd. of Educ*., 647 F.3d 652, 662

(7th Cir.2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986)).

Summary judgment is inappropriate for determination of claims in which issues of intent,

good faith, and other subjective feelings play dominant roles. ***Ashman v. Barrows***, 438 F.3d

781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence,

judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court

will determine whether there exists a genuine issue of triable fact. ***Wheeler***, 539 F.3d at 634

(citing ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d

202, 212 (1986)).

In deciding a motion for summary judgment, the trial court must determine whether the

evidence presented by the party opposed to the summary judgment is such that a reasonable jury

might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining
> whether there is the need for a trial--whether, in other words, there
> are any genuine factual issues that properly can be resolved only by
> a finder of fact because they may reasonably be resolved in favor of
> either party.
>
> [T]his standard mirrors the standard for a directed verdict under
> Federal Rule of Civil Procedure 50(a), which is that the trial judge
> must direct a verdict if, under the governing law, there can be but one
> reasonable conclusion as to the verdict.
>
> ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 250, 106 S. Ct. 2505,

2511, 91 L.Ed.2d 202, 212 (1986).

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-51, 120 S.Ct. 2097, 2109, 147 L. Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-23, 106 S. Ct. at 2553; ***Stephens***, 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008)(stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durflinger,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

"As a *pro se* litigant, [a] [p]laintiff is permitted a more lenient standard with respect to her pleadings than that imposed on a practicing attorney." ***Cintron v. St. Gobain Abbrassives, Inc***., 2004 WL 3142556, * 1 (S.D. Ind. Nov. 18, 2004). Although the court recognizes that *pro se* litigants face special challenges that litigants represented by counsel do not, *pro se* litigants are not excused from following procedural rules simply because the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers." ***Lee v. Wal-Mart Stores***, 1994 WL 899240, * 1 (N.D. Ind. Apr. 12, 1994). The ***Lee*** court explains,

> [the court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

***Lee***, 1994 WL 899240 at *1 (quoting ***Mohasco Corp. v. Silver***, 447 U.S. 807, 826, 100 S. Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)).

A defendant filing a motion for summary judgment must warn a pro se plaintiff of the consequences of failing to respond to the motion. ***Timms v. Frank***, 953 F.2d 281, 285

(7th Cir.1992). The notice must include the text of Federal Rule of Civil Procedure 56(e) and a short statement informing the plaintiff that all factual assertions made by the defendant will be taken as true should the plaintiff fail to respond. ***Timms***, 953 F.2d at 285. Walgreens served the requisite notice, and Canty filed a timely response. The court will now evaluate Canty's claim on the merits.

Title VII enables a plaintiff to prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in ***McDonnell Douglas Corporation v. Green***, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in ***Texas Department of Community Affairs v. Burdine***, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See* ***Northington v. H & M International,*** ---F.3d ---, 2013 WL 1150215, \*2 (7th Cir. 2013); ***Moser v. Indiana Department of Corrections***, 406 F.3d 895, 900-01 (7th Cir. 2005). The direct method requires the plaintiff to show through either direct or circumstantial evidence that the employer's adverse employment action was impermissibly motivated. ***Wilkins v. Riveredge Hospital***, 130 Fed. Appx. 823, 828 (7th Cir. 2005).

The most general statement of the ***McDonnell Douglas*** method of proof is that the plaintiff has the initial burden of showing that: 1) she belongs to a protected group; 2) she was performing to the employer's legitimate expectations; 3) she suffered an adverse employment decision; and 4) the employer treated similarly situated employees who are not in the protected group more favorably. *See* ***Northington,*** ---F.3d ---, 2013 WL 1150215, \*2; ***Keeton v. Morningstar, Inc***., 667 F.3d 877, 884 (7th Cir. 2012); ***Moser,*** 406 F.3d at 900; ***O'Neal v. City of Chicago***, 392 F3d 909, 911 (7th Cir. 2004); ***Williams v.***

*Waste Management of Illinois, Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004). This framework is flexible and may be adapted to fit each case. *Burdine,* 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; *Wohl v. Spectrum Manufacturing, Inc.*, 94 F.3d 353, 359 (7th Cir. 1996).

Once the plaintiff has met this initial burden, "a presumption of discrimination arises, and the employer must articulate a legitimate, nondiscriminatory reason for its employment action." *Moser*, 406 F.3d at 895; *O'Neal*, 392 F.3d at 911. The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks*, 509 U.S.502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2099, 2106, 147 L.Ed.2d 105 (2000). The burden then shifts back onto the plaintiff to show that the reason given by the defendant is just a pretext for discrimination. *Moser*, 406 F.3d at 900-01. The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." *Crim v. Board of Education of Cairo School District No. 1,* 147 F.3d 535, 541 (7th Cir. 1998). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001); *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000); *Crim,* 147 F.3d at 541.

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff. *Moser,* 406 F.3d at 901; *Haywood v. Lucent Technologies, Inc.*, 232 F.3d 524, 531 (7th Cir. 2003); *Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001 (7th Cir. 2000). A plaintiff alleging discrimination,

however, has a lesser burden when proceeding on a summary judgment motion. In

***Anderson v. Baxter Healthcare Corp.***, 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit

stated:

> Both ***McDonnell Douglas*** and [***St. Mary's Honor Center v. Hicks***,
> 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the
> plaintiff bears at trial. However, for summary judgment purposes,
> the nonmoving party, in this case the plaintiff, has a lesser burden.
> He must only "produce evidence from which a rational fact-finder
> could infer that the company lied" about its proffered reasons for
> dismissal.
>
> 13 F.3d at 1124 (*quoting* ***Shager v. Upjohn,*** 913 F.2d 398, 401
> (7th Cir. 1994))

*See also* ***Plair v. E.J. Brach & Sons, Incorporated***, 105 F.3d 343, 349 (7th Cir. 1997); ***Cliff v.***

***Board of School Commissioners of the City of Indianapolis, Indiana***, 42 F.3d 403, 412 (7th

Cir. 1994). If the plaintiff is unable to meet her burden, her claims must fail.

Canty has not presented direct evidence of discrimination and has chosen to proceed on

the indirect method of proof. Canty was a member of a protected class, women, and suffered an

adverse employment action. The parties dispute whether she was performing in accordance with

Walgreen's legitimate expectations and was treated less favorably than similarly situated

employees who were not in the protected group.

In her amended complaint and response brief, Canty has identified four male employees

whom she alleges were similarly situated and were treated more favorably. Walgreens disagrees

that these employees were similarly situated. The undisputed evidence shows that none of the

employees Canty identified received more than one customer complaint in a six month period.

Canty counters that the employment records of the identified employees would show that they

were the subject of customer complaints. However, Canty has not provided the court with the

employment records of those employees, and the time for Canty to obtain the employment records has expired. It appears that Canty did not request the documents during discovery, and she has provided no evidence to support her position.

Federal Rule of Civil Procedure 56(d) states, "If a party opposing the motion shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[1]  In order to succeed on a Rule 56(d) Motion, the plaintiff must identify the specific evidence which would create a genuine issue of fact. *American Needle, Inc v. National Football League*, 538 F.3d 736, 740  (7th Cir. 2008) (overturned on other grounds).  "Summary judgment should not be entered 'until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion.'" *Chalimoniuk v. Interstate Brands Corporation*, 172 F. Supp.2d 1055, 1057-58 (S.D. Ind. 2001)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  Rule 56(d) is not meant to allow a party to block summary judgment simply by offering generalities about the need for further discovery. *Woods v. City of Chicago*, 234 F.3d 979, 990-91 (7th Cir. 2001)**.** "Rule [56(d)] does not operate to protect parties who are dilatory in the pursuit of discovery." *Allan Block Corp. v. County Materials Corp.*, 588 F.Supp.2d 976, 980 (W.D. Wis. 2008)(citing *Doty v. Illinois Cent. R. Co.*, 162 F.3d 460, 461-62 (7th Cir. 1998)).

---

[1] Federal Rule of Civil Procedure 56 was amended in 2010.  Subsection (d) was carried forward without substantial change from prior subdivision (f).  FED. R. CIV. P. 56 Advisory Committee Notes.  Therefore, some of the cases the court cites may refer to Rule 56(f), but the current Rule 56(d) analysis is the essentially the same.

A court may grant a Rule 56(d) motion on the grounds that issues of material fact were in dispute and the requesting party deserved the opportunity and benefit of discovery. *See Chalimoniuk*, 172 F. Supp. 2d at 1057-58 (granting Rule 56(d) motion when plaintiff moved for summary judgment before any discovery had taken place). Likewise, when issues material to the outcome of the matter are in question, the full benefit of discovery is deserved. *Chalimoniuk*, 172 F. Supp. 2d at 1059.

However, a court may deny a Rule 56(d) motion when a party fails to pursue discovery in the allotted time frame. *See Allen Block Corporation v. County Materials Corporation*, 588 F. Supp.2d 976, 980-81 (W.D. Wis. 2008) ("It would be . . . inappropriate to continue trial to permit yet another period of discovery when plaintiff has failed to take full advantage of two lengthy opportunities for discovery."). *See also Hu v. Park National Bank*, 333 Fed. Appx. 87, 89-90 (7th Cir. 2009) (affirming denial of Rule 56(d) motion because the plaintiff "did nothing during discovery" and waited until two months after Park National Bank had filed its motion for summary judgment to ask for additional time for discovery). Likewise, a court may deny a Rule 56(d) motion because the requesting party fails to identify with specificity the evidence it may have obtained with the additional discovery that would create a genuine issue of material fact. *See American Needle Inc. v. National Football League*, 538 F.3d 736, 740 (7th Cir. 2008) (affirming district court's denial of Rule 56(d) motion). In short, the moving party must show: (1) good cause for the discovery delays; (2) the specific discovery that is necessary to prepare a response to the motion for summary judgment; and (3) that the additional discovery will give rise to a genuine issue of material fact. *Bernegger v. Gray & Associates LLP*, 2009 WL 3148723, *3 (E.D. Wis. 2009).

The record reveals that Canty made no efforts to obtain discovery during the discovery process. Given her *pro se* status, the court must be more lenient in evaluating her position, however the court is not compelled to set aside the procedural rules to aid a *pro se* litigant. Canty has not requested any additional discovery and has not provided any explanation for her failure to pursue discovery during the discovery period. Because of this, she has no supporting evidence and is not entitled to pursue additional discovery to support her claims.

In his affidavit, Robbins stated that the employees Canty identified as similarly situated were not in fact similarly situated. None of the employees was the subject of multiple customer complaints and none received more than one customer complaint in a six month period. The only evidence that contradicts this statement is Canty's deposition testimony that Tom Stephens and Mike Kujawa had multiple complaints but were never written up for them. Canty could not recall how many complaints were made against either employee or the specific information surrounding the complaints. She only was aware of the complaints through word of mouth and notes that were left. Canty also complains that the store she was assigned to was known for having a greater number of customer complaints and that previous to being assigned to this store, where she was the only female manager, she did not have any problems with customer complaints.

The plaintiff, who carries the burden of showing that an employee is similarly situated, "must address such factors as performance, qualifications and conduct, in addition to the identity of supervisors, the standards that govern job performance, and the similarity or differences in the conduct of these other employees." *Giwa v. City of Peoria, Ill*., ---F.Supp.2d---, 2013 WL 105162, *4 (C.D. Ill. Jan. 8, 2013). "The similarities and differences must be 'sufficiently

comparable' in 'all material respects.'" ***Crawford v. Indiana Harbor Co.***, 461 F.3d 844, 846 (7th Cir. 2006). In the case of an unsatisfactory employee, the similarly situated employee's conduct must be comparably bad or worse. ***Porter v. Chicago Park Dist.,*** 155 F.Supp.2d 857, 861 (N.D. Ill. 2001).

Canty has not demonstrated that she can prove that any of the employees she identified engaged in conduct that was as bad as or worse than her own. She has pointed to no evidence to show that customers complained about the employees she identified as often as customers made complaints about her. In fact, the uncontested evidence shows that none of the employees received more than one complaint in a six month period, while Canty arguably received five complaints over a one year period. Although Canty argues that she was assigned to a store with a greater rate of customer complaints, Canty has not explained whether the employees she identified were assigned to the same or different stores, and if assigned to different stores, whether the number of complaints they received was proportional based on the number of complaints each store typically received. Canty carried the burden to show that the employees were similarly situated, and without evidence that they had a similar disciplinary record, this comparison cannot be made. It was not Walgreens' duty to come forth with this information absent a request during the discovery period. Canty made no such request and now cannot support her position.

Walgreens also argues that Canty was not performing up to its legitimate expectations. As part of her employment, Canty was expected to "improve and maintain good customer service". (Robbins Aff. Ex. 1). Although the number of complaints Walgreens expected to receive was not quantified, Walgreens did provide training on how it expected its employees to

treat and respond to customers and evaluated its employees in this category on an annual basis.

Canty received multiple warnings concerning her attitude towards customers, including two written warnings that her performance was not in accordance with her employer's expectations, and she was told that further complaints could lead to her termination. Canty does not dispute that the customer complaints were made. Regardless of whether she agrees with the merits of the complaints, the record reflects that more customer complaints were made about Canty than any other employee. The number of complaints, especially when compared to other employees, shows that Canty was not providing good customer service. In light of the number of complaints and notices that she was not providing the type of customer service Walgreens expected, the record reflects that Canty did not meet Walgreen's legitimate expectations.

Because Walgreens has shown that Canty cannot succeed in establishing a prima facie case, the Motion for Summary Judgment [DE 60] is **GRANTED.**

ENTERED this 11th day of April, 2013

/s/ Andrew P. Rodovich

United States Magistrate Judge